UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| WENDY CUMMINGS,<br><br>*Plaintiff*,<br><br>v.<br><br>BEXAR COUNTY, TEXAS, SUSAN PARMERLEAU, FORMER BEXAR COUNTY SHERIFF, and SHERIFF'S DEPUTY HUMBERTO HERNANDEZ, INDIVIDUALLY,<br><br>*Defendants*, | Civil Action No. 5:17-CV-783-XR |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

On this date, the Court considered Defendants' Motion for Summary Judgment (docket no. 22), Plaintiff's Response (docket no. 25), and Defendants' Reply (docket no. 26). After careful consideration, the Court GRANTS Defendants' motion.

**BACKGROUND**

This case stems from Plaintiff Wendy Cummings' July 24, 2015 arrest for possession of a prohibited weapon in a Bexar County courthouse. Plaintiff filed her original petition on July 10, 2017 in the 408th District Court in Bexar County, Texas, and Defendants removed to this Court on August 17, 2017. Docket no. 1. In her amended complaint, Plaintiff brings a claim for deprivation of constitutional rights under 42 U.S.C. § 1983 and state law claims for false imprisonment, assault, intentional infliction of emotional distress, and defamation. Docket no. 12. Plaintiff brings these claims against Bexar County, Texas; Former Bexar County Sheriff Susan Parmerleau (who was sheriff at the time of Plaintiff's arrest); and Sheriff's Deputy

1

Humberto Hernandez (who participated in Plaintiff's arrest). *Id.* It is not explicitly stated whether Plaintiff sues Parmerleau and Hernandez in their individual capacities in addition to their official capacities, but this Court construes the complaint as raising individual-capacity claims.

On the day of her arrest, Plaintiff appeared for jury duty at the Bexar County Justice Center. Plaintiff, upon returning from her lunch break, was detained during the security screening process. The crux of the incident is Plaintiff's possession of an item described by Plaintiff as a "kitty cat novelty key chain," docket no. 25, and described by Defendants as "knuckles," docket no. 22. Because she had this item, Plaintiff was arrested. Defendants allege the Texas Penal Code makes it a crime to possess certain prohibited weapons or entering a courthouse with such a weapon. Defendants cite § 46.03, "Places Weapons Prohibited," which provides that "[a] person commits an offense if the person intentionally, knowingly, or recklessly possess or goes with a . . . prohibited weapon listed in Section 46.05(a) . . . . on the premises of any government court or offices utilized by the court[.]" TEX. PENAL CODE § 46.03. Section 46.05 provides that "[a] person commits an offense if the person intentionally or knowingly possesses . . . knuckles," among other prohibited weapons. *Id.* § 46.05(a)(2).

Plaintiff alleges that a guard pulled her purse from the courtroom security belt, alerted a deputy that "she's got brass knuckles," and pulled her keys—to which the alleged knuckles were attached—from her purse. Docket no. 12 at 3. Plaintiff alleges that she apologized profusely after being told that the item was prohibited in court. *Id.* Plaintiff alleges she told Deputy Barre that she had been in and out of the courthouse with the item several times and that she purchased the item as a keychain decoration. Docket no. 25 at 2. Plaintiff alleges that Hernandez talked to Barre but disregarded Plaintiff's statements to Barre. *Id.* Plaintiff alleges that Hernandez told her that bringing the keychain into the courthouse was a third-degree felony and then instructed

2

Barre to handcuff and arrest Plaintiff. *Id.* Neither party disputes that Plaintiff possessed the item or that she was aware she possessed the item. Plaintiff argues instead that she was not aware it was illegal to possess. *Id.*

Plaintiff alleges she was handcuffed behind her back and taken to a room, where her legs were shackled, and then escorted through the courthouse. *Id.* She alleges that, after spending some time in a holding cell, Hernandez led her down a hallway of cells containing inmates "making lewd noises and gestures at her." *Id.* She alleges she asked Hernandez to put the shackles over her pants, but Hernandez laughed in response. *Id.* She alleges that, while in an elevator, Hernandez "thumped her in the back and told her 'I said face the damn wall.'" *Id.* at 4.

Plaintiff alleges she was transported to Bexar County Jail, where the guards laughed at and teased her and denied repeated requests for medicine that she needed as a result of recent heart surgery. *Id.* Plaintiff alleges that while her file states she was released on bond at 5:30 p.m., she was actually held until 4:30 a.m. *Id.* at 5. The charges against Plaintiff for bringing the item into the courthouse were ultimately dismissed on motion of the prosecuting attorney due to "insufficient evidence." Docket no. 25 at 9; Docket no. 25-7.

Plaintiff alleges Hernandez has participated in two similar arrests of courthouse patrons possessing similar keychains that ended the same way—with charges dismissed by the prosecutor. Docket no. 25 at 10; docket no. 25-8 and no. 25-9. In the first example, a woman named Cameo Fonseca was arrested for possessing knuckles on January 29, 2015, several months prior to Plaintiff's arrest. Docket no. 25-9. In Hernandez's report, he states that Conseca's purse contained an item he identified as knuckles. *Id.* Hernandez states that she asked if she could throw away the item and said she "didn't know I wasn't supposed to have that," and in response he told her she could not throw it away and that she was under arrest. *Id.* Charges

stemming from this arrest were dismissed on motion of the prosecutor "[i]n the interest of justice." *Id.*

In the second example, a woman named Lorena Bejar, who was at the courthouse on jury duty, had "knuckles" attached to a "spiderman face back pack," according to Hernandez's report. Docket no. 25-8. She was arrested on August 26, 2015, *id.*, a few weeks after Plaintiff. Hernandez states that as he was putting handcuffs on Bejar she said "I didn't even know those were illegal to have." *Id.* Charges against Bejar were dismissed on motion of the prosecutor due to insufficient evidence. *Id.*

Defendants move for summary judgment on Plaintiff's state claims because, if a governmental unit and its employees are named in a suit subject to the Texas Tort Claims Act, the governmental unit can move to dismiss its employees, as Bexar County does here. Docket no. 22 at 13. Bexar County, in turns, asserts sovereign immunity as a defense to its own tort liability. *Id.* Further, Defendants argue Plaintiff's IIED claim should be dismissed, as her other claims are based on the same operative facts. *Id.* at 15.

Defendants also move for summary judgment on Plaintiff's § 1983 claims on the basis that

- Parmerleau, in her individual capacity, is immune to suit under qualified immunity because she had no personal involvement in the incident and did not ratify unconstitutional acts as a supervisor;
- Hernandez, in his individual capacity, also has qualified immunity because Plaintiff cannot show he lacked probable cause for an arrest;
- suit against Parmerleau and Hernandez in their official capacities is duplicative of suit against Bexar County; and

4

- no Bexar County policy or custom caused the alleged constitutional violation.

Docket no. 22.

## DISCUSSION

**I.    Standard of Review**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on

a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the non-moving party, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II. Application

### A. Plaintiff's State Claims

Plaintiff brings state claims against Defendants, individually and collectively, for false imprisonment and unlawful detention (based on an allegedly unlawful arrest lacking probable cause), assault (based on allegedly offensive physical contact), and defamation (based on allegedly illegal detention in front of fellow jurors, members of Plaintiff's community). Docket no. 12 at 5-7. Plaintiff also brings a state claim for intentional infliction of emotional distress. *Id.* at 6.

Under Texas law, a suit against a government employee in that employee's official capacity is a suit against that employee's government employer, and the employee shares its employer's immunity. *Franka v. Velasquez,* 332 S.W.3d 367, 382 (Tex. 2011) (cited as "summariz[ing] general Texas immunity law" by *Molina v. Alvarado*, 463 S.W.3d 867, 869 (Tex. 2015)). The sole exception is when the action alleges the employee acted outside the scope of employment. *Id.* at 383. An employee can be sued in the employee's individual capacity, however, as "public employees . . . have always been individually liable for their own torts, even when committed in the course of employment[.]" *Id.*

The Texas Tort Claims Act ("TTCA") waives, in certain circumstances, the immunity from suit a governmental unit and its employees sued in their official capacity would otherwise enjoy. TEX. CIV. PRAC. & REM. CODE § 101.025 ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."). The TTCA lists circumstances in

which immunity is waived, including property damages, personal injury, and death, *id.* § 101.021, although damages are capped, *id.* § 101.023. Immunity is not waived, however, for claims "arising out of assault, battery, false imprisonment, or any other intentional tort[.]" *Id.* § 101.057.

The TTCA also contains a provision requiring plaintiffs to choose, in many cases, between suing a governmental entity and that entity's employees. *Id.* § 101.106. This election-of-remedies provision "encourages, and in effect mandates, plaintiffs to pursue lawsuits against governmental entities rather than their employees when the suit is based on the employee's conduct within the scope of employment." *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 350 (Tex. 2013). The provision encompasses several situations, but the one invoked by Defendants, docket no. 22 at 13, and relevant here is set out in § 101.106(e): "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e).

The phrase "under this chapter," however, does not apply only to claims for which the TTCA waives immunity. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 658 (Tex. 2008). To the contrary, the Texas Supreme Court has applied § 101.106 to bar plaintiffs' claims against government employees even where the TTCA did not waive governmental immunity for those claims. *Id.* (citing, e.g., *Newman v. Obersteller*, 960 S.W.2d 621, 622–23 (Tex. 1997) (holding that the "limiting phrase 'under this chapter' operated to bar an intentional tort against an employee . . . even though the Act by its terms expressly excluded intentional torts

7

from the scope of the Act's immunity waiver")).[1] The TTCA is the "only, albeit limited, avenue for common-law recovery against the government," so all tort theories are assumedly "under the act" for § 101.106 purposes. *Id.* at 659.

Here, Plaintiff's state claims are dismissed in their entirety. First, Plaintiff names both a governmental unit (Bexar County) and employees of that unit (Parmerleau and Hernandez) in her state claims; Bexar County moves to dismiss Parmerleau and Hernandez under § 101.106(e). Docket no. 22 at 13. Although the TTCA does not waive immunity for the intentional torts alleged by Plaintiff, these torts are "under the [TTCA]" for purposes of § 101.106(e), as construed by Texas courts. *See Garcia*, 253 S.W.3d at 659. Plaintiff's state claims against Hernandez and Parmerleau, in their individual capacities, are thus dismissed.

Having moved for dismissal as to its employees under the election-of-remedies provision, Bexar County raises sovereign immunity as a defense to its own liability. Docket no. 22 at 14. Assault and false imprisonment are specifically listed as intentional torts for which immunity remains, TEX. CIV. PRAC. & REM. CODE § 101.057, and defamation is also an intentional tort included in this TTCA exception, *see Jackson v. Texas A&M Univ. Sys.*, 975 F. Supp. 943, 946 (S.D. Tex. 1996). Plaintiff's assault, false imprisonment, defamation, and IIED claims against Bexar County are thus dismissed as falling outside the TTCA's waiver of sovereign immunity.

Alternatively, Plaintiff's IIED claim is still subject to dismissal. Under Texas law, "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of

---

[1] The *Garcia* court recognized that *Newman* and other cited cases cited a prior version of § 101.106, but stressed that "nothing in the amended version" indicates "a narrower application of the phrase 'under this chapter' was intended." *Garcia*, 253 S.W.3d at 659. In the court's view, the

> revision's apparent purpose was to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery.

*Id.* at 657.

emotional distress should not be available," *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004), and such is the case here. The facts on which Plaintiff's IIED claim is based are the same facts on which Plaintiff's federal claims and other state claims are based; these other claims are the gravamen of Plaintiff's complaint.

Therefore, Plaintiff's state claims fail as a matter of law, and summary judgment on these claims is granted as to all Defendants.

### B. Plaintiff's Federal Claims

Plaintiff also brings civil-rights claims against Defendants under 42 U.S.C. § 1983. Docket no. 12 at 7. Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured." 42 U.S.C. § 1983. The alleged constitutional violation is framed in the complaint as the "right not to have [Plaintiff's] integrity violated by the actions of those whose charge it was to uphold the law," *id.*, and in the response to Defendants' Motion as the "right of being free from unlawful arrest," docket no. 25 at 3.

Although Defendants note that Plaintiff does not specifically indicate whether she is suing Parmerleau and Hernandez in their individual as well as official capacities, courts look to the "course of proceedings" to determine the issue when the capacity of claim is ambiguous. *See Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically indicate[s] the nature of the liability sought to be imposed.") (citations omitted); *U.S. ex rel. Adrian v. Regents of Univ. of California*, 363 F.3d 398, 403 (5th Cir. 2004). The course of proceedings here, which focuses on the conduct of Hernandez at the time of the arrest rather than solely on Bexar County policies, indicates to this

9

Court that Plaintiff levels claims against Hernandez in both his individual and official capacities. And although Plaintiff points to little direct action of Parmerleau's that relates to this incident, Plaintiff does claim that Parmerleau can be liable under a theory of supervisory liability, docket no. 25 at 16, so the course of proceedings also implicates Parmerleau's individual and official capacities.

### i. Defendants Former Sheriff Parmerleau and Deputy Hernandez in their individual capacities

With respect to their individual capacities, Parmerleau and Hernandez invoke the defense of qualified immunity. Docket no. 22 at 2. Qualified immunity is an immunity from suit that extends to government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Plaintiff does not dispute that Parmerleau and Hernandez, as sheriff and sheriff's deputy, respectively, are eligible to invoke qualified immunity in this case. Once invoked by a defendant, the burden is on a plaintiff to demonstrate qualified immunity is inapplicable; and that burden is high. *Kitchen v. Dallas County*, 759 F. 3d 468, 476 (5th Cir. 2014). The two-part test for qualified immunity on summary judgment is: 1) whether a plaintiff "adduced sufficient evidence to raise a genuine issue of material fact suggesting [an officer's] conduct violated an actual constitutional right," and 2) whether the officer's "actions were objectively unreasonable in light of clearly established law at the time" of the alleged violation. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

Objective reasonableness is a matter of law for the court to decide. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000) (citing *Williams v. Bramer*, 180 F.3d 699, 702

(5th Cir. 1999)). A case directly on point is not required for the law to be clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). "Qualified immunity should not be denied unless the law is such that reasonable officials should be 'on notice [that their] conduct is unlawful.'" *Kinney v. Weaver*, 367 F.3d 337, 367 (5th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

### a. Deputy Hernandez

Plaintiff's first step in overcoming Hernandez's qualified immunity is to raise a triable fact issue on whether Hernandez violated an actual constitutional right. *See Brumfield*, 551 F.3d at 326. Notwithstanding other elements of Plaintiff's experience that doubtless added to her discomfort, including the alleged comments from guards and her almost-overnight stay in jail, the constitutional violation relevant here is whether Hernandez violated Plaintiff's right to be free from arrest without probable cause.

Probable cause requires a "basis for an officer to believe to a fair probability that a violation occurred." *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000). Probable cause exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *accord Maryland v. Pringle*, 540 U.S. 366, 370–71 (2003).

Here, Plaintiff alleges that Hernandez[2] lacked probable cause to arrest Plaintiff. Plaintiff alleges she told Barre that she did not know her item constituted knuckles, nor did she know that possessing that item in the courthouse was illegal. Plaintiff alleges that Barre then relayed Plaintiff's comments to Hernandez. Plaintiff argues that these comments were evidence that Plaintiff did not have the mental state required under the Texas Penal Code provisions on which Hernandez relied. By hearing this evidence and ordering Plaintiff's arrest in spite of it, Plaintiff argues Hernandez lacked probable cause, and that without probable cause the arrest constituted a violation of Plaintiff's Fourth Amendment rights.

The Texas Penal Code provisions under which Plaintiff's arrest was based, cited in full above, require that she possess the offending item "intentionally or knowingly" (TPC § 46.03) or "intentionally, knowingly, or recklessly" (TPC § 46.05). These mental states are defined in TPC § 6.03 as follows:

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.
(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

---

[2] Defendants note that Barre, not Hernandez, was the arresting officer. Docket no. 22 at 4. Plaintiff cites several cases (docket no. 25 at 12), such as *Evett v. DETNFF*, 330 F.3d 681 (5th Cir. 2003), that discuss when an official sued in their supervisory capacity may be held liable for a subordinate's action, given that § 1983 does not accommodate traditional *respondeat superior*, *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 n. 58 (1978). Plaintiff's allegations against Hernandez center on *Hernandez's* decisions to disregard information gained from talking to Barre and make the decision to arrest Plaintiff. Hernandez is the principal actor—not merely Barre's supervisor—in the version of events advanced by Plaintiff. Thus, Plaintiff does not specifically assert a claim against Hernandez in a supervisory capacity with respect to Barre (and it is not even specified that Hernandez *was* Barre's supervisor), nor are the facts advanced by Plaintiff the sort that would make an analysis of supervisory liability appropriate.

No party disputes that Plaintiff was aware she had the item in her purse. Plaintiff's argument, then, is that she did not know that possessing the item violated the law. But this exceeds the level of culpability required for probable cause. The conduct prohibited by the provisions in question is *possession*. Taking the minimum required mental state, all that is required is that Plaintiff knew she possessed the item that is a prohibited weapon under the law, even if she did not know it was a prohibited weapon, or that Plaintiff knew she possessed (or was aware of but consciously disregarded a substantial and unjustifiable risk that she possessed) the item the law considers a prohibited weapon when she entered a courthouse with it.

No one disputes that she knew she possessed this item. Nor does Plaintiff appear to argue at this stage that her item is not "knuckles," defined in the law as "any instrument that consists of finger rings or guards made of a hard substance and that is designed, made, or adapted for the purpose of inflicting serious bodily injury or death by striking a person with a fist enclosed in the knuckles." TPC § 46.01(9). She argues only that she did not know at the time that it was illegal to have the item.

That might sound (or be) reasonable, but "the offense of possession of a prohibited weapon [is] complete" when a person is "placed in possession of the prohibited weapon." *Hawkins v. State*, 535 S.W.2d 359, 362 (Tex. Crim. App. 1976). As Defendants note, Fourth Amendment cases reflect the common-law rule that an officer can "arrest without a warrant for a misdemeanor or felony committed in his presence[.]" *See United States v. Watson*, 423 U.S. 411, 418 (1976). Further, probable cause "applies to all arrests, without the need to 'balance' the interest and circumstances involved in particular situations." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (rejecting the arrestee's argument that the arresting officer should have used his discretion not to arrest her for the Texas misdemeanor of not wearing a seatbelt, given

13

that she was a resident of the area and "would almost certainly have buckled up as a condition of driving off with a citation"). The *Atwater* court held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Id.*

Plaintiff alleges that Hernandez lacked probable cause because he disregarded facts relayed by Barre that would negate probable cause. But viewing properly the mental state required, the statements Plaintiff made to Barre do not negate probable cause. If all that the law required is that Plaintiff knew she possessed an item, and Hernandez saw that she possessed the item (which he viewed as falling within the statutory definition of prohibited weapons), and her only defense in the moment is that she knew she possessed the item but did not know the law prohibits that possession, the Court can reach no conclusion but that Hernandez had probable cause.

Many law enforcement officers might, in their discretion, see in Plaintiff's version of the facts a person who made an innocent mistake in bringing a self-defense item into a courtroom and who (very reasonably) assumed the law would not paint a "machine gun,"[3] a "chemical dispensing device,"[4] or "armor-piercing ammunition"[5] with the same brush as her self-defense item shaped like cat ears. But for better or worse, the penal code as written does lump these items together, and for better or worse Hernandez chose to enforce the code strictly.

Thus, Plaintiff does not allege facts that, even viewed in the light most favorable to her, rise to the level of a constitutional violation. Because it is sufficient to decide this case on the first qualified-immunity prong, the Court does not need to determine, under the second prong, whether Hernandez's conduct was objectively reasonable even in the absence of probable cause.

---

[3] TPC § 46.05(a)(1)(B).
[4] TPC § 46.05(a)(4).
[5] TPC § 46.05(a)(3).

Accordingly, under the doctrine of qualified immunity Hernandez is immune from suit on Plaintiff's claims in his individual capacity.

### b. Former Sheriff Parmerleau

The Court turns now to Parmerleau. Plaintiff does not allege that Parmerleau—Bexar County sheriff at the time of Plaintiff's arrest—was personally aware or involved in the incident, so any claim against Parmerleau in her individual capacity must be related to her supervisory capacity.

Section 1983 does not create vicarious or *respondeat superior* liability. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691, (1978); *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987). Instead, a plaintiff must show that the supervisor was personally involved in the alleged constitutional violation or that there is a "sufficient causal connection" between the supervisor's conduct and the violation. *Thompkins*, 828 F.2d at 304. The standard is "deliberate indifference," which requires that the supervisor "disregarded a known or obvious consequence of [her] action," not that the supervisor made unintentional oversights. *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003) (quoting *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir.1997)).

The only allegation relevant here is that Hernandez had been involved in similar arrests related to the same or similar "knuckles," which generated reports, and under sheriff's department policy a supervisor must review all reports. Docket no. 25 at 19. Even viewing the facts in the light most favorable to Plaintiff, this single fact is too attenuated from any specific act by Parmerleau to show "deliberate indifference" on Parmerleau's part. This is especially so because the arrest of Bejar occurred after the arrest of Plaintiff, meaning Parmerleau could only have known of one other incident at the time Plaintiff was arrested. Thus, Plaintiff's allegations

do not satisfy the first prong of the qualified-immunity test, so it is not necessary to consider the second prong. Applied to Parmerleau, then, qualified immunity bars Parmerleau from suit.

### ii. Former Sheriff Parmerleau and Deputy Hernandez in their official capacities

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690, n. 55. If the government entity "receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 165–66. Accordingly, because Plaintiff asserts a claim against the entity, Bexar County, and county officials, Parmerleau and Hernandez, in their official capacities, any official-capacity claims against Parmerleau and Hernandez are dismissed as duplicative or redundant.

### iii. Bexar County

Plaintiff alleges that Parmerleau's actions as a "final policymaker" of Bexar County led to the creation of a custom of arrests lacking probable cause that caused Plaintiff's alleged constitutional violation, and that Bexar County is therefore liable. Docket no. 25 at 16-20.

Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S. at 691. Official municipal policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011). Proof of municipal liability requires "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *Piotrowski v. City of*

*Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Without a "smoking gun" making it clear that the objectionable conduct was municipal policy, the Fifth Circuit has marked "two paths of proof:"

1. A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Pineda*, 291 F.3d at 328.

Taking each in turn, it is first clear that no express policy statement, ordinance, regulation, or decision of Bexar County is cited by Plaintiff and none is at issue. The inquiry here must instead focus on the second path, a "widespread practice" that "constitute[s] a custom that fairly represents municipal policy." Plaintiff's argument appears to be that Hernandez's practice of arresting people for possessing knuckles even though they do not have the requisite culpability generates erroneous reports, and Bexar County's omissions in disciplining Hernandez and correcting the reports constitute a custom that satisfies *Monell*. Plaintiff argues that Parmerleau "effectively condoned creation of a custom by ratifying the unconstitutional or illegal acts of her subordinate" Hernandez. Docket no. 25 at 19. Plaintiff argues that the reports generated from Hernandez's previous arrests for knuckles "clearly lack the requisite evidence of culpability, yet the reports were not withdrawn or corrected," even though Bexar County Sheriff's Department policy calls for a supervisor to review each report. *Id.*

This argument fails on all three requirements set out in *Pineda*. First, Plaintiff does not sufficiently allege an official policy. The Supreme Court has held that "[a]n act performed

17

pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Although courts have acknowledged that there are no "bright-line rules for establishing what constitutes a widespread custom or practice," it has been found insufficient when only a few incidents are alleged. *Wilson v. Cook Cty.*, 742 F.3d 775, 780 (7th Cir. 2014) ("[I]t is clear that a single incident—or even three incidents—do not suffice" to establish "the kind of pervasive custom that would give rise to liability under . . . *Monell*.").

In *Pineda*, the Fifth Circuit held, on summary judgment, that the plaintiff submitted insufficient evidence to create a triable issue that a police department's task force was "engaged in a pattern of unconstitutional searches pursuant to a custom of the City." 291 F.3d at 329. The plaintiffs produced reports of eleven warrantless entries into residences, but this was not a "persistent and widespread practice." *Id.* ("Eleven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces.").

Here, the three incidents specified by Plaintiff are insufficient, even viewing the facts in Plaintiff's favor, to make out a claim for § 1983 municipal liability under a "widespread practice" theory. For one thing, Plaintiff points to the fact that the charges resulting from these arrests were dropped "in the interest of justice" or due to "insufficient evidence," but this does little to show that these arrests lacked probable cause; it shows only that the prosecutor's office decided not to pursue conviction. Most importantly, while the string of three similar arrests (Fonseca in January, Plaintiff in July, and Bejar in August) does indicate a pattern, for purposes of establishing a custom that caused Plaintiff's arrest only Fonseca's arrest can be taken into

18

account; Bejar's arrest occurred after Plaintiff's. Even assuming (based only on Hernandez's report) that Fonseca's arrest was unconstitutional, the case law shows that a "customary municipal policy cannot ordinarily be inferred from single constitutional violations." *See Piotrowski*, 237 F.3d at 581.

Second, "[a]ctual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority," but Plaintiff does not meet this requirement. Plaintiff appears to argue that Parmerleau is a final policymaker here and gained constructive knowledge of the alleged custom of illegal arrests by virtue of the department policy that supervisors review reports. Whether an official has final policymaking authority is an issue of law to be determined by the court by reference to state and local law. *Praprotnik*, 485 U.S. at 123. Even assuming that Plaintiff is correct in stating that "in Texas, the county sheriff is the county's final policymaker in the area of law enforcement," docket no. 25 at 17, Plaintiff alleges no facts that allow this Court to reach the conclusion that Parmerleau had the necessary knowledge. Here, even if the reports Plaintiff indicates are deficient, Plaintiff's argument at most shows that *a* supervisor within the sheriff's department did not correct them, not that a specific exercise of policymaking discretion by Parmerleau caused Plaintiff's alleged violation. The Fifth Circuit in *Pineda* rejected expert opinions that were "unable to muster more than vague attributions of knowledge to unidentified individuals in 'management' or the 'chain of command,'" and Plaintiff's complaint, despite the repeated references to Parmerleau, amounts to similar "vague attributions of knowledge."

Finally, since there is insufficient evidence of a qualifying custom and, even if such a custom existed, insufficient evidence that any final policymaker had knowledge of it, this

"widespread practice" cannot have caused Plaintiff's alleged constitutional violation. Accordingly, summary judgment is granted as to Plaintiff's § 1983 claim against Bexar County.[6]

## ATTORNEY FEES

Defendants request "all of their costs incurred in defending this cause, including reasonable attorneys' fees," but cite no authority and offer no reasons why they should recover fees. Docket no. 22 at 15. A district court is authorized by 42 U.S.C. § 1988 to award attorney's fees to a prevailing § 1983 defendant "only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Graham*, 473 U.S. at 165, n. 9. The Court has no reason to believe this is such a case. Defendants' fee request is denied. Defendants are awarded costs of court.

## CONCLUSION

Defendants' Motion for Summary Judgment (docket no. 22) is GRANTED. The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff, and it is ORDERED and ADJUDGED that Plaintiff shall take nothing by her claims and her claims are DISMISSED WITH PREJUDICE. The Clerk is directed to CLOSE this case.

It is so ORDERED.

SIGNED this 30th day of October, 2018.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[6] While Plaintiff's claims do not survive summary judgment, perhaps this suit will alert the Sheriff's Department that its deputy's zealous enforcement has led to the arrests of three courthouse patrons (at least two of whom were serving as jurors). If this type of enforcement is not in line with department priorities, perhaps this lawsuit and order will provide pause to Bexar County deputies to consider exercising their arrest discretion more generously.